## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | | |
|---|---|---|
| Erik Greene, as personal representative of the Estate of Emory Bruce Greene, and on behalf of all others similarly situated, | ) ) ) | C.A. No.: 2:07-cv-1648-PMD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Life Care Centers of America, Inc., for itself and d/b/a Life Care of Hilton Head, Charleston Medical Investors, LLC, d/b/a Life Care of Charleston, RMC Columbia, Inc. d/b/a Life Care of Columbia, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on Defendant Life Care Centers of America's ("Defendant") Motion for Summary Judgment. For the reasons set forth herein, Defendant's Motion is denied.

### BACKGROUND

This uncertified class action was brought in the Court of Common Pleas for Charleston County on May 4, 2007, and Defendants filed a Notice of Removal on June 13, 2007. Plaintiff filed an Amended Complaint on June 27, 2007, in which he listed the following causes of action: (1) breach of contract; (2) violation of the South Carolina Unfair Trade Practices Act; (3) fraud; (4) constructive fraud; (5) negligent misrepresentation; and (6) declaratory judgment/permanent injunction.

The facts giving rise to the instant suit concern Defendant's billing practices with respect to Emory Bruce Greene ("Mr. Greene"), a former resident at the Life Care Center of Charleston,

a skilled nursing facility.  Plaintiff's decedent, Mr. Greene, was admitted to Life Care of Charleston on July 28, 2005, after a hospital stay at Trident hospital because of injuries he sustained in a fall.  He suffered from a subdural hematoma brain injury and supranuclear palsy. These severely impaired his balance and motor functions, and required several different types of skilled therapy.  Mr. Greene had insurance coverage for his health care from Medicare, but this benefit expired 100 days after his initial hospitalization.  However, because Mr. Greene was a veteran of the United States armed forces, he was also insured through TRICARE for Life Medical Benefit ("TRICARE"), formerly known as OCHAMPUS.

Life Care submitted claims to TRICARE for services provided to Mr. Greene from November 1, 2005, through January 31, 2006.  On April 17, 2006, TRICARE sent a letter denying this claim on the grounds that the services provided to Mr. Greene were not "medically necessary."  TRICARE stated that earlier claims had been paid in error and demanded a refund for those improperly paid amounts.  Although the claim was appealed, on June 15, 2006, the TRICARE appeals examiner issued a written opinion denying the claim.  That opinion stated:

> The initial denial notice/letter was mailed to the beneficiary on 04/17/2006.  There is a presumption that the beneficiaries [sic] receipt of the "notice of denial" would be five calendar days after the date on the initial determination.  Therefore, it is presumed that the beneficiary received the notice on 04/22/2006.  There is no other documentation that the beneficiary was otherwise informed that the care was excluded on the basis of medical necessity, therefore, it is determined that the beneficiary is liable for payment effective 04/23/2006, since the beneficiaries [sic] liability begins on the day after the date that the denial letter would be presumed to have been received.

> The provider should be held liable form [sic] 11/24/2005 through 01/31/2006.  The services that are at issue are the subject of what are generally considered acceptable standards of practice by the local community.  The provider could be expected to know that this patient did not meet the generally recognized criteria for continued medically necessary skilled nursing care.

(Pl.'s Resp. at 3.)  Although the appeal decision informed Life Care that it had the right to appeal the decision within ninety days, Life Care did not appeal.

Although the appeals decision indicated that Mr. Greene was liable for payment beginning on April 23, 2006, Life Care sent a letter dated May 26, 2006, to Mark Greene seeking payment for services rendered before that date.  The letter stated:

> The current outstanding balance is $28,830.10.  I understand the financial and emotional hardship this places on you and your family, however we both need to be proactive in rectify [sic] our current situation as soon as possible.  It is my understand [sic] that selling your father's home may be an option to pay privately, but currently there are no funds available to cover the denied charges that are accruing daily.
>
> As I stated earlier we will do everything we can to challenge the Tricare denials, but if we are not successful in our efforts your father's account will revert to private pay retroactive back to January 1, 2005.  We are happy to provide your father with the best care possible but unfortunately as I'm sure you understand we cannot allow him to remain with us with an inability to pay for the care we provide.
>
> Therefore, I am required by law to inform you that this letter hereby serves as a formal (30) day notice of discharge **effective June 28, 2006**.  If payment is received in full prior to the close of business on June 5, 2006, we will be more than happy to have Mr. Emory Greene stay with us here at Life Care as a private pay resident.  Otherwise, please make preparations to take him home or to another facility.

(Pl.'s Ex. 4.) (emphasis in original).  Mr. Greene was discharged from the Life Care facility on June 11, 2006, and he died at home on July 8, 2006.[1]

Life Care sent collection letters to Mr. Greene, and on September 20, 2006, Life Care sent a letter to Mr. Greene indicating that if payment in full was not received within ten days, Life Care "will turn this account over to our collection agency. . . . If placed with the collection

---

[1] In the Amended Complaint, Plaintiff alleges that "Mr. Greene voluntarily left the facility." (Am. Compl. ¶ 31.)  In Plaintiff's response to Defendant's Motion for Summary Judgment, however, Plaintiff indicates that Mr. Greene was "discharged" from Life Care's facilities.  (Pl.'s Resp. at 4.)

agency, this could have a negative effect on your ability to obtain credit in the future." (Pl.'s Ex. 5.) Life Care ultimately filed the claim with the Estate of Mr. Greene. The Estate issued a notice of denial of the claim, and the notice stated that "Life Care of Charleston improperly charged for services pursuant to 32 CFR 194(h) and according to the findings of the TriCare Appeals Examiner." (Def.'s Ex. H.)

In his Amended Complaint, Plaintiff alleges that Life Care improperly billed for the services Mr. Greene received. Plaintiff alleges:

> 21. Upon information and belief, TRICARE entered a provider agreement with Life Care, pursuant to which Life Care agreed to accept patients covered by TRICARE. Life Care agreed to provide services to TRICARE beneficiaries based upon federal TRICARE regulations and according to the terms of the agreement ("Provider Agreement").
>
> 22. The Provider Agreement sets the rates that Life Care can charge TRICARE for service to TRICARE benefit holders. These rates are generally lower than rates that Life Care charges to non-TRICARE patients. Pursuant to the agreement and pursuant to federal regulation, Life Care cannot bill its patients for the difference between the benefits paid by TRICARE and the rates for non-TRICARE patients.
>
> . . .
>
> 28. Despite the fact that Life Care was prohibited from charges [sic] for services prior to April 22, 2006, Life Care billed and demanded that Mr. Greene pay for such services.

(Pl.'s Am. Compl. ¶¶ 21-22, 28.)

In early 2008, Plaintiff and Defendant each filed a Motion for Partial Summary Judgment "in an effort to narrow the scope of discovery and legal issues before the Court." In an order dated June 9, 2008, this court denied both parties' motions without prejudice, on the grounds that they had moved for summary judgment only on issues, and not the specific claims in the litigation. On August 1, 2008, Defendant filed the present Motion for Summary Judgment. Plaintiff filed a Response on August 25.

## STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party 'is particularly strong when the nonmoving party bears the burden of proof.' " *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327.

## ANALYSIS

### I.    Plaintiff's Breach of Contract Claim

Defendant has moved for summary judgment on five out of Plaintiff's six causes of action.[2]  Defendant has first moved for summary judgment as to Plaintiff's claim for breach of contract.  Defendant asserts that Plaintiff has no valid breach of contract cause of action because Mr. Greene was not a third-party beneficiary to any agreement between Life Care and TRICARE.

"A breach of contract is defined as a failure without legal excuse to perform any promise which forms the whole or part of the contract."  *Tomlinson v. Mixon*, 367 S.C. 467, 479, 626 S.E.2d 43, 49 (Ct. App. 2006) (citing *Black's Law Dictionary* 188 (6th ed. 1990)).  Plaintiff asserts that there were two separate contracts breached by Defendant.  First, Plaintiff alleges that Defendant breached the agreement between Mr. Greene and Life Care, by violating the covenant of good faith and fair dealing that accompanies any contract.  Second, Plaintiff asserts that Defendant breached the contract between Life Care and TRICARE, to which Mr. Greene was a third-party beneficiary.

Mr. Greene and Life Care entered into an agreement for medical and residential services at the skilled nursing facility.  "There exists in every contract an implied covenant of good faith and fair dealing."  *Tharpe v. G.E. Moore Co.*, 254 S.C. 196, 201, 174 S.E.2d 397, 399 (1970).  Plaintiff asserts that Defendant violated this covenant of good faith and fair dealing by attempting to bill Mr. Greene for services which it was, by law, prohibited from charging him.  Generally speaking, there is no breach of the implied covenant of good faith by conduct which is

---

[2] Defendant has not moved for summary judgment on Plaintiff's second cause of action, a violation of the South Carolina Unfair Trade Practices Act.  However, in his Response to Defendant's previous motion for partial summary judgment, Plaintiff "concedes that an action[] under the South Carolina Unfair and Deceptive [sic] Trade Practices Act cannot be brought in a representative capacity."  (Pl.'s Reply at 1.)  Since there is no longer any disagreement between the sides regarding whether or not this is a valid cause of action, the court hereby dismisses this claim.

authorized under the law.  *See, e.g.*, *Calcaterra v. City of Columbia*, 315 S.C. 196, 432 S.E.2d 498 (Ct. App. 1993) (holding that it did not violate the implied covenant of good faith and fair dealing for municipality to only sell water to residents of the city at the statutorily-established rate, and to charge nonresidents a higher price).

The question before the court on this cause of action, then, seems to be whether or not Defendant was legally authorized to bill Mr. Greene for the services in question.  If Life Care did in fact charge Mr. Greene for services rendered in violation of federal law, Plaintiff has a legitimate claim for breach of contract.  However, if Life Care was fully authorized under the law to bill Mr. Greene for the services rendered in question, it was fully within its rights to do so, and cannot be said to have breached its contract.

"All claims submitted for health services under CHAMPUS[3] are subject to review for quality of care and appropriate utilization. . . .  These standards, norms and criteria shall include, but not be limited to, need for inpatient or outpatient service, length of inpatient stay, intensity of care, appropriateness of treatment, and level of institutional care required."    32 C.F.R. 199.15(a)(2).  As discussed earlier in the Order, in the present case, TRICARE determined that it was not medically necessary for Mr. Greene to stay at Life Care after November 1, 2005, and that, consequently, TRICARE would not pay for services provided after such time.  The initial notice of denial of benefits was provided to Mr. Greene on April 22, 2006, so TRICARE concluded by saying that Mr. Greene should only be responsible for paying for any services received after April 23, 2006.  The determination that these services were not medically necessary was appealed, and affirmed by TRICARE's appeals examiner.  It is clear, then, that

---

[3] TRICARE is a successor program of CHAMPUS, and laws and regulations that previously applied to CHAMPUS now apply to TRICARE.

TRICARE is not liable for the medical services provided by Life Care during the time period commencing on November 1, 2005, and running until April 22, 2006. The question before the court becomes whether the fact that Life Care provided Mr. Greene with care and services which Mr. Greene believed to be covered by TRICARE, and was in fact not covered by TRICARE, also means that Mr. Greene cannot be held liable for such care and services.

Section 199.15(b)(2) specifically provides that:

> (2)  Payment exclusion for services provided contrary to utilization and quality standards.
>
>> (i)  In any case in which health care services are provided in a manner determined to be contrary to quality or necessity standards established under the quality and utilization review program, payment may be wholly or partially excluded.
>>
>> (ii)  In any case in which payment is excluded pursuant to paragraph (b)(2)(i) of this section, *the patient (or the patient's family) may not be billed for the excluded services.*

32 C.F.R. § 199.15(b)(2) (emphasis added). The regulation is clear, then, that if it is determined that services were provided that were not medically necessary, a patient or patient's family cannot be billed for these services. Essentially, the regulatory regime places the burden of being familiar with what is and is not medically necessary on the medical service provider, not on the patient or patient's family, and if the medical service provider provides care that turns out to be not medically necessary, the service provider must bear the costs of that care.[4] In its initial denial letter, TRICARE found that Life Care should have been aware of the appropriate rules and

---

[4] The court notes that this does not mean that a health care provider must constantly be forced to bear the burden of uncompensated cost. The regulations in question make ample provisions for getting certain avenues of medical care pre-approved as medically necessary, or if TRICARE determines that a certain avenue of care was not, according to the guidelines, medically necessary, but that the health care provider could have justifiably have believed that it was, that TRICARE would bear the cost.

standards for what constitutes "medically necessary" care, and thus should be responsible for bearing the costs of Mr. Greene's post-November 1, 2005 residence and care at the facility.

Defendant asserts that this rule, and the determination by the TRICARE appeals examiner, does not prohibit it from billing Mr. Greene for the care provided, for a number of reasons. First, Defendant claims that TRICARE regulations and rulings are not binding upon it because it is not an "authorized provider" under the regulations. The regulations define "authorized provider" as "[a] hospital or institutional provider, a physician, or other individual professional provider of services or supplies specifically authorized to provide benefits under CHAMPUS in Sec. 199.6 of this part." 32 C.F.R. § 199.2.

Defendant notes that the rules also provide that a skilled-nursing facility such as Life Care, "in order to be an authorized provider under TRICARE, must enter into a participation agreement with TRICARE for all claims." 32 C.F.R. § 199.6. Defendant asserts that at no point did Life Care enter into a participation agreement with TRICARE, a point which Plaintiff does not contest. Defendant asserts that the regulations only prohibit authorized providers from billing armed services veterans covered by TRICARE insurance for services deemed to not be medically necessary, and that Life Care was accordingly not bound by these rules and was well within its rights to bill Mr. Greene for the services provided after November 1, 2005.

However, the regulations also provide that:

> Claim-specific participation. A CHAMPUS-authorized provider that is not required to participate and that has not entered into a participation agreement pursuant to paragraph (a)(8)(ii)(A) of this section may elect to be a participating provider on a claim-by-claim basis by indicating "accept assignment" on each claim form for which participation is elected.

32 C.F.R. § 199.6(a)(8)(ii)(B). The regulations go on to specify that:

> Claim-by-claim participation.  Individual providers that are not participating providers pursuant to paragraph (a)(8)(ii) of this section may elect to participate on a claim-by-claim basis.  They may do so by signing the appropriate space on the claims form and submitting it to the appropriate TRICARE contractor on behalf of the beneficiary.

32 C.F.R. § 199.6(a)(8)(iii).  Clearly, then, whether or not Defendant formally entered into a participation agreement with TRICARE is not necessarily determinative of whether or not Defendant was required to abide by TRICARE's rules and determinations.

It appears that no federal court has previously addressed this precise issue.  However, a holistic reading of the other sections of the regulatory regime clearly reveals that the authors of the regulations in question intended that in situations where the patient was led to believe that insurance would cover a given course of care, that the burden of the cost of that medical care that was not medically necessary should remain upon the provider of that care.  If the provider is unsure about whether or not care is medically necessary, there are provided procedures such as preauthorization to ensure that they are not required to bear the cost of any care about which there is legitimate uncertainty regarding its medical necessity.  Furthermore, there is an appeals process and if TRICARE makes a factual determination that a medical care provider had legitimate grounds for uncertainty as to whether or not the provided care was medically necessary, the cost will often be covered.

However, TRICARE and the authors of the regulations pertaining to TRICARE face the unenviable dual tasks of ensuring that our indigent armed services veterans receive basic medical care at no cost to them while making sure that taxpayers do not bear the burden of paying for care that is not medically necessary for those covered.  What the drafters of these regulations clearly sought to avoid was (a) armed services veterans being denied coverage over uncertainty on the part of the medical services provider over whether they would be compensated for such

services or not; and (b) armed services veterans being provided with services they believed to be covered by TRICARE, only to be billed by the medical services provider after the fact. The latter category is precisely what is alleged to have occurred in the present case. It seems highly unlikely that the drafters of these regulations intended that a health care services provider could, by simply not entering into a formal participation agreement with TRICARE, reap the benefits of being compensated for providing medical services to those covered by TRICARE without having to adhere to the standard of not providing services that are not medically necessary.

Under Defendant's proposed interpretation of the law, any health care service provider, if they did not enter into an explicit provider agreement with TRICARE, would be free to accept or disregard any and all TRICARE rules and regulations. The provider would have no duty to honestly and responsibly inform their patients of their rights, and would have no duty to make any sort of honest assessment of what was and was not medically necessary (and therefore covered by TRICARE). The provider would be able to urge the beneficiary to seek out certain types of medical care, letting the beneficiary believe that such care was medically necessary and would therefore be covered by TRICARE. Then, after the TRICARE claim had been rejected as not medically necessary, the provider could simply turn around and demand full payment for the care from the patient. It would, in short, completely remove any burden upon the care provider for making the ultimate determination of whether or not a specific treatment was medically necessary, and place that burden squarely upon the patient. This would certainly not be the most efficient legal regime, since health care providers, as repeat participants in the TRICARE process, are sophisticated and familiar with the norms and procedures and the most well-situated to apply those norms and procedures to determine whether or not a given course of care is medically necessary or not. Furthermore, this is definitely not the regime envisioned by the

11

federal regulations governing the program, which leave no doubt that the ultimate burden for determining whether a course of care is medically necessary, and the financial consequences of an incorrect determination, lies squarely with the health care provider. This would be grossly unjust to those covered by TRICARE, and the court rejects this interpretation of the regulations in question.

Instead, the only logical interpretation of these regulations is that by submitting a TRICARE claim on behalf of a patient, a service provider is agreeing to abide by the applicable regulations and any subsequent rulings by the TRICARE appeals examiner on the subject, even if on a case-by-case basis. In the present case, by submitting a TRICARE claim and pursuing that claim on behalf of Mr. Greene, Life Care was submitting itself to the applicable regulations and agreeing to abide by any ruling on the subject by TRICARE's appeals examiner. As previously explained, the regulations prohibited charging a patient for care that was not medically necessary, and the appellate review found unequivocally that the care provided was not medically necessary, and that Life Care should have been aware that it was not medically necessary.

Accordingly, Life Care was prohibited by law from charging Mr. Greene for the services it rendered from November 1, 2005 until April 22, 2006, and an attempt to do so constituted a breach of the implied covenant of good faith and fair dealing in the contract Mr. Greene entered into with Life Care.

Defendant's next claim, however, is that it was entitled to bill Mr. Greene for the time period in question because he was informed that this care may not be covered by his insurance. According to TRICARE rules:

> In most cases, the beneficiary's liability begins on the date the beneficiary is found to have known that the services were excludable based on the PROs retrospective determination that such services were not medically necessary. An exception is when the beneficiary is receiving ongoing inpatient services. In this case, the beneficiary's liability for excluded services will begin on the day after the date the beneficiary is found to have known services were excludable.

(Pl.'s Ex. 3 at 49.) TRICARE also provides that:

> If the beneficiary did not know, nor could reasonably be expected to know, that services were excludable as not medically necessary, but the provider did know, or could have been reasonable [sic] expected to know, that services were excludable as not medically necessary, then payment shall not be made on such services and the beneficiary will not be held liable for the excludable services.

*Id.* at 52. However, TRICARE rules also require that:

> If both the beneficiary and the provider knew, or could reasonably be expected to know, that services were excludable as not medically necessary, then payment not [b]e made for such services and the beneficiary will be responsible for the excluded services.

*Id.* The question becomes, then, whether or not Mr. Greene knew or could reasonably be expected to know, that the care provided to him by Life Care during the time period in question was excludable as not medically necessary.

In a letter dated November 18, 2005, Life Care informed Mr. Greene and his family that, since his Medicare coverage was exhausted, his coverage status may be changing. He was informed that "[s]hould Medicare find that Life Care Center's date of discharge was the appropriate date of discharge, you will be responsible for all charges incurred during the disputed dates, including room and board charges, and (if applicable) medications, therapies, and supplies." (Def.'s Ex. G.) However, this letter only concerned the issue of whether or not Medicare would continue to pay for Mr. Greene's residential care needs, and Life Care ultimately concluded that it would not since Medicare's 100 day time limit had expired.

However, the fact that Mr. Greene and his family were put on notice that continuing skilled care would not be covered by Medicare does not necessarily also meant that Mr. Greene and his family had been put on notice that continuing skilled care would not be covered at all. As previously explained, TRICARE is supplemental insurance which offers coverage above and beyond that provided by Medicare.  Plaintiff asserts that Mr. Greene believed his skilled residential care provided by Life Care after November 1 would be covered by TRICARE. Defendant has produced no definitive evidence that Mr. Greene knew or reasonably could have been expected to know that further care was no longer medically necessary, and Life Care appears to have at least in part helped foster this belief, as Defendant did attempt to submit the costs of Mr. Greene's care after November 1 to TRICARE for reimbursement.  Therefore, taking the facts in the light most favorable to Plaintiff, the court cannot definitively say that Mr. Greene knew or should have known that any care provided to him by Life Care after November 1 would not be covered by TRICARE.

Defendant further asserts that it cannot be held liable on any of Plaintiff's claims because Plaintiff has no private cause of action under the regulations in question.  The Supreme Court of the United States has held:

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress.  The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.  Statutory intent on this latter point is determinative.  Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.  "Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.

*Alexander v. Sandoval*, 532 U.S. 275 286-87 (quoting *Lampf, Pleva, Lipkind, Prupis Petigrow v. Gilbertson*, 501 U.S. 350, 365 (1991) (Scalia, J., concurring in part and concurring in judgment))

14

(citations omitted) (quoted in *Wogan v. Kunze*, 366 S.C. 583, 599, 623 S.E.2d 107, 116 (Ct. App. 2005)).  The Court went on to explicitly abandon its earlier views on the subject, which held that there was an implied cause of action under federal law where a cause of action was necessary to serve the legislative goals of the statute.  *Id*. at 287 (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)).

Here, the court is interpreting not a statute, but a federal regulation.  Unlike the commonly interpreted Medicare and Medicaid statutes, there is very little legislative history available by which this court may discern the drafters' intent.  The regulations that govern the administration of TRICARE are distinct from Medicare and Medicaid in one important respect, in that the statutes outlining the administration of Medicare and Medicaid provide for remedial administrative measures to enforce the statutes, whereas in the current case there is no administrative remedy specifically provided for handling complaints regarding TRICARE.

However, as previously explained, the court has explicitly instructed district courts not to find that there is an implied cause of action under federal law solely because such a cause of action is necessary to serve the purpose of the regulation.  Absent any explicit evidence of legislative intent that the statute or regulation in question creates a private cause of action, a court must find that the statute or regulation does not create a private cause of action.  In the present case, there is no evidence, either in the language of the regulations themselves or in any sort of legislative history, that the regulations were intended to create a private cause of action.  Accordingly, Defendant's contention that these regulations do not create a private cause of action is correct.

However, this does not mean that Plaintiff's suit is invalid as a matter of law.  None of Plaintiff's six causes of action were explicitly brought under the federal regulations governing

the administration of TRICARE.  Even if there is no private federal remedy created by the statute or regulation, the federal statute or regulation preempts any state law claim which concerns an identical subject matter.  In other words, a plaintiff may not use a state law claim as mere pretext to vindicate an alleged violation of a federal statute or regulation for which there is no private cause of action.  *See Wogan*, 366 S.C. at 602, 623 S.E.2d at 117.  The question before the court then becomes whether Plaintiff is merely seeking to recover damages for Defendant's alleged violation of the federal regulations, or whether there was an extra element present in the allegations that form the basis of Plaintiff's claims which make them materially distinct from an attempt to bring suit against Defendant for failure to comply with the federal regulations.

Plaintiff's breach of contract claim is, essentially, that Defendant breached its implied covenant of good faith and fair dealing which attaches to the contractual relationship between the two parties.  Plaintiff is not merely saying, as was the case in many of the cases cited to this court by Defendant, that Defendant made an honest or medically-informed decision that was allegedly in violation of the relevant regulations.  *See, e.g.*, *Wogan*, 366 S.C. at 588-90, 623 S.E.2d at 110-11 (involving a claim that physicians had violated federal law governing Medicare when the physicians would not prescribe a certain drug for a plaintiff).  Here, Plaintiff is alleging that Defendant led Mr. Greene to believe that the care provided to him after November 1 would be covered by TRICARE, knowing that there was at least a substantial chance that this was not true.

Later, after being officially notified that Mr. Greene's care after November 1 was not medically necessary and that it could not, by law, bill Mr. Greene for the care provided after this date, Defendant intentionally disregarded the law and represented to Mr. Greene that he legally owed Defendant tens of thousands of dollars for the care provided to him during this time.  In short, Plaintiff is not merely alleging that Defendant failed to follow the regulations concerning

16

the proper administration of TRICARE, but is alleging that Defendant acted in a manipulative and dishonest fashion in order to intentionally obtain money to which it was not legally entitled from Mr. Greene.  The court finds that these additional allegations of Defendant's conduct render the cause of action for breach of the covenant of good faith and fair dealing sufficiently distinct from a mere violation of the federal regulations that this cause of action is not preempted by those regulations.  If the covenant of good faith and fair dealing offers any protection at all to consumers, it surely protects them from the other party willfully misrepresenting whether a certain course of care will be covered by insurance, and surely protects them from a health care provider knowingly and dishonestly charging them for services which it was prohibited from doing by law.  Therefore, Plaintiff is not barred from bringing such a cause of action in this court.

Accordingly, Defendant has failed to show that it is entitled to judgment as a matter of law on Plaintiff's breach of contract cause of action as it relates to the agreement between Mr. Greene and Life Care.

The court now turns to the question of whether Plaintiff's claim for breach of contract based on the contract between Life Care and TRICARE fails as a matter of law.  Defendant asserts that it cannot be held liable by Plaintiff on a breach of contract claim related to any agreement between Life Care and TRICARE because Mr. Greene was not a third-party beneficiary of that contract.

"Generally, a third person not in privity of contract with the contracting parties does not have a right to enforce the contract.  'However, if a contract is made for the benefit of a third person, that person may enforce the contract if the contracting parties intended to create a direct,

17

rather than an incidental or consequential, benefit to such third person.' " *Hardaway Concrete Co. v. Hall Contracting Corp.*, 374 S.C. 216, 225, 647 S.E.2d 488, 492-93 (Ct. App. 2007) (quoting *Bob Hammond Constr. Co. v. Banks Constr. Co.*, 312 S.C. 422, 424, 440 S.E.2d 890, 891 (Ct. App. 1994)).  Plaintiff argues that Mr. Greene was an intended beneficiary of the contract between Defendant and TRICARE.

However, in a similar (Medicare) situation, it was explicitly determined that a patient was not an intended beneficiary of a contract between the health care provider and Medicare. *Wogan*, 366 S.C. at 604, 623 S.E.2d at 118 ("[Plaintiff] maintains Mr. Wogan was a third-party beneficiary of the contract, and their failure to submit the claim renders them liable for the breach.  We disagree.").  In the current case, Plaintiff attempts to distinguish the present circumstances from the facts of *Wogan* on the basis of a clause in the agreement between Defendant and TRICARE which specifically prohibited the billing of the patient for care deemed not medically necessary.

While Plaintiff argues that this single distinction between the contract in *Wogan* and the contract in the present case transforms the Plaintiff's contractual claim into a claim more akin to the class action claims against health care providers who participated in "balance billing" patients in violation of federal law.  *See, e.g.*, *Mallo v. Public Health Trust of Dade County*, 88 F. Supp. 2d 1376 (S.D. Fla. 2000).  However, the authority cited by Plaintiff in support of this proposition has nothing whatsoever to do with whether a party is a third-party beneficiary or not, and involves a completely distinct and unrelated cause of action from a breach of contract claim.

The court is left with no other possible conclusion than that under South Carolina law, an agreement between a health care provider and a government insurer does not confer third-party

18

beneficiary status (and the attendant right to bring a suit for violation of that contract) upon the patient in question, absent clear evidence to the contrary in the contract itself.  While there are, of course, slight differences between the contract between TRICARE and Life Care and the contract at issue in *Wogan*, these differences are not so legally significant as to constitute a material distinction that would make Mr. Greene an intended third-party beneficiary of the contract.  Since he was not a third-party beneficiary of the contract, Plaintiff may not base his breach of contract claim upon the contract between TRICARE and Life Care.

Accordingly, Defendant has not established that Plaintiff's breach of contract claim fails as a matter of law, but this cause of action must be exclusively based upon Defendant's alleged breach of the contract between Mr. Greene and Life Care.

## II.   Plaintiff's Claims for Fraud, Constructive Fraud, and Negligent Misrepresentation

Plaintiff's other remaining claims are for fraud, constructive fraud, and negligent misrepresentation.  Defendant asserts that it cannot be held liable on any of these counts because an integral element of each of these causes of action is a false representation upon which a plaintiff justifiably relied.  *See Kahn Constr. Co. v. South Carolina Nat. Bank of Charleston*, 275 S.C. 381, 384, 271 S.E.2d 414, 415 (1980) (specifying that a plaintiff must demonstrate that a false representation was made in order to recover on a fraud cause of action); *Woods v. State*, 314 S.C. 501, 506, 431 S.E.2d 260, 263 (Ct. App. 1993) (holding that a plaintiff must demonstrate that a false representation was made in order to recover on a constructive fraud cause of action); *Hurst v. Sandy*, 329 S.C. 471, 481, 494 S.E.2d 847, 852 (Ct. App. 1997) (holding that a plaintiff must demonstrate that a false representation was made in order to

recover on a negligent misrepresentation cause of action). Defendant claims that at no point did Life Care ever make a false representation to Mr. Greene, so all of Mr. Greene's claims must therefore fail as a matter of law.

The court holds that Life Care did make a representation of fact to Mr. Greene. By sending him a bill for services rendered, Life Care was representing that (a) it had a legal right to charge Mr. Greene for the care provided after November 1, and (b) that Mr. Greene was legally obligated to pay that sum. No reasonable person would receive a bill from a health care provider and think that the provider was not legally entitled to send the bill, or that he or she was not legally required to pay the specified amount. Furthermore, the court holds that the representation made on the bill sent by Life Care to Mr. Greene was false. As explained in detail above, TRICARE regulations, as well as a specific decision by a TRICARE appeals examiner, prohibited Defendant from billing Mr. Greene for the care provided. These regulations did apply to Defendant, and Defendant was therefore not legally entitled to bill Mr. Greene, and Mr. Greene was not legally required to pay this bill.

However, Defendant also asserts that even if the court holds that it did make a false representation of fact to Mr. Greene, it should not be held liable on these causes of action, because Mr. Greene's reliance on the billing letter was "unreasonable and unjustifiable." (Def.'s Mem. at 13.) Mr. Green did have a copy of the agreement between himself and Life Care, and had a substantial amount of paperwork from TRICARE concerning the rules that governed the insurance coverage available to him. In order to recover on any of these three causes of action, Plaintiff must demonstrate that Mr. Greene was justified in relying upon Life Care's false representation.

"[O]ne can not rely on the misstatement of fact if the truth is easily within his reach."

*Jones v. Cooper*, 234 S.C. 477, 109 S.E.2d 5, 11 (1959).  A South Carolina court has further clarified:

> Courts do not sit for the purpose of relieving parties who refuse to exercise reasonable diligence or discretion to protect their own interests.  Moreover, there is no right to rely, as required to establish fraud, where there is no confidential or fiduciary relationship, and there is an arm's length transaction between mature, educated people.  This is especially true in circumstances where one should have utilized precaution and protection to safeguard his interests.

*DeHart v. Dodge City of Spartanburg, Inc.*, 311 S.C. 135, 139, 427 S.E.2d 720, 722 (Ct. App. 1993) (citations omitted).  "The general rule is that questions concerning reliance and its reasonableness are factual questions for the jury."  *Unlimited Servs., Inc. v. Macklen Enters., Inc.*, 303 S.C. 384, 387, 401 S.E.2d 153, 155 (1991); *see also Starkey v. Bell*, 281 S.C. 308, 313, 315 S.E.2d 153, 156 (Ct. App. 1984) ("Issues of reliance and its reasonableness, going as they do to subjective states of mind and applications of objective standards of reasonableness, are preeminently factual issues for the triers of the facts.").  Defendant asserts that given the materials at his disposal, Mr. Greene was responsible for knowing whether he was actually legally required to pay the bill or not.  In fact, Defendant makes the assertion that "Mr. Greene and his family are as capable of learning about how their insurance worked as Life Care." (Def.'s Mem. at 14.)

The court unequivocally rejects this line of reasoning, and holds that it was reasonable and justifiable for Mr. Greene to rely upon the representations of Life Care in believing that he was legally required to pay for care provided after November 1.  To suggest that a retired veteran who may have little formal education and no experience with the medical and insurance bureaucracies is "as capable" of discerning the intricacies of federal insurance programs as a

residential care provider who repeatedly interacts with these bureaucracies and regulations, and who employs educated, sophisticated professionals whose job it is to be familiar with the rules and regulations does not reflect the reality of the relationships between insurer, insured, and provider.

The reality is that when a care provider accepts an assignment of a TRICARE veteran's insurance benefits, the insured must be able to reasonably rely upon representations made by the provider.  It is simply unrealistic to expect the insured in these situations to make determinations about what the insurance does and does not cover, and it is certainly unrealistic to expect them to be able to make definitive determinations about which courses of care are medically necessary. The court further notes that the practical consequences of Defendant's proposed interpretation of the law of reasonable reliance would wreak havoc upon both the health care industry and judicial system.  Health care providers would have every incentive to attempt to unlawfully bill patients for amounts the patient did not actually owe.  Patients would have every incentive to scrutinize and contest on legal grounds each and every health care bill they received.  The trust between doctors and patients would be completely eroded and they would become adversaries, and many of these problems would end up being contested in court.  Such a system would be disastrous for all parties involved.

Accordingly, since Plaintiff has established an issue of material fact as to whether Life Care made a false representation that Mr. Green justifiably relied upon in paying the bill, Plaintiff's claims for fraud, constructive fraud, and negligent misrepresentation do not fail as a matter of law.

### III.    Plaintiff's Claims for Declaratory Judgment and Permanent Injunction

For Plaintiff's final cause of action, Plaintiff seeks declaratory judgment and permanent injunction against Defendant.  Defendant asserts that these causes of action fail as a matter of law, solely on the grounds that since Plaintiff has failed to establish an issue of material fact as to whether or not Life Care committed any unlawful acts, and therefore Plaintiff cannot be granted either of these two remedies.  However, as explained in this Order, Plaintiff has in fact established an issue of material fact as to the lawfulness of Defendant's actions, and Plaintiff's sixth and final cause of action does therefore not fail as a matter of law.

### CONCLUSION

For the foregoing reasons, the court **ORDERS** that the Defendant's Motion for Summary Judgment be **DENIED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**December 23, 2008**